1

2

3

4

5

6

7

8           UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10          SAN JOSE DIVISION

11

| | |
|---|---|
| 12   UNITED STATES OF AMERICA | Case No. 15-CR-00561-LHK |
| 13          Plaintiffs, | **ORDER GRANTING MOTION FOR** |
| | **JOINDER; DENYING MOTION TO** |
| 14      v. | **SUPPRESS AND MOTION TO** |
| | **PRECLUDE EVIDENCE** |
| 15   LAURENCE MILES, et al. | |
| | Dkt. No. 65 |
| 16          Defendants. | |

17

18          Defendants Laurence Miles ("Miles") and Munsif Shirazi ("Shirazi") are charged with

19   wire fraud, conspiracy to commit wire fraud, and money laundering.  Before the Court are Miles's

20   motion to suppress and motion to preclude evidence, ECF No. 65 ("Mot."), and Shirazi's motion

21   for joinder in Miles's motion to preclude evidence, ECF No. 66.  The Court finds this matter

22   suitable for decision without oral argument and hereby VACATES the motion hearing set for

23   March 29, 2017, at 9:15 a.m.  Having considered the parties' briefing, the relevant law, and the

24   record in this case, the Court hereby GRANTS Shirazi's motion for joinder, DENIES Miles's

25   motion to suppress, and DENIES Miles's and Shirazi's motion to preclude evidence.

26   **I.      BACKGROUND**

27                                          1

28   Case No. 15-CR-00561-LHK
     ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO
     PRECLUDE EVIDENCE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    On December 3, 2015, Miles was indicted, along with co-defendants Shirazi, Robert

2  Stephens ("Stephens"), Rayan Lakshmanan ("Lakshmanan"), and Shirley Molina ("Shirley" or

3  "Molina") (collectively, "Defendants"), on charges of (1) conspiracy to commit wire fraud, in

4  violation of 18 U.S.C. § 1349; (2) wire fraud, in violation of 18 U.S.C. § 1343; and (3) money

5  laundering, in violation of 18 U.S.C. § 1957(a).  ECF No. 1 ("Indictment").  The Indictment

6  charges Defendants with participating in a "scheme to defraud whereby [Defendants] solicited

7  investors to provide money for medical care for 'Shirley,' who [Defendants] claimed was very ill

8  and due to inherit a large estate."  *Id.* at ¶¶ 10–13.  Defendants promised investors a share of

9  Molina's estate once the assets were released from a secret probate proceeding.  *Id.* at ¶¶ 10–14.

10  However, Defendants knew "there was no estate to be settled," and "Molina was not extremely ill

11  and was not the heiress to a large estate."  *Id.* ¶ 14.  This scheme began "in at least 2009" and

12  continued "through November 2015."  *Id.* at ¶ 10.  According to the Indictment, Miles "held

13  himself out as the executor and trustee of [Molina's] estate."  *Id.* at ¶ 2.  Shirazi was Miles's

14  "assistant."  *Id.* ¶ 3.

15    On December 15, 2015, Shirazi entered a plea of not guilty.  ECF No. 11.  On December

16  18, 2015, Miles entered a plea of not guilty.  ECF No. 14.

17    Miles filed a motion to sever on February 22, 2017, which requested that the Court sever

18  Miles's trial from Molina's trial.  ECF No. 63.  Shirazi and Lakshmanan joined in Miles's motion.

19  ECF Nos. 60, 64.  On February 22, 2017, Molina also filed a motion to sever, which requested that

20  the Court sever Molina's trial from that of her co-defendants.  ECF No. 62.

21    However, on March 8, 2017, Molina pled guilty.  ECF No. 69.  On March 15, 2017,

22  Lakshmanan pled guilty.  ECF No. 75.  Accordingly, Defendants' motions to sever are DENIED

23  as moot.

24    On February 22, 2017, Miles filed a motion to suppress and a motion to preclude evidence.

25  *See* Mot.  Shirazi filed a motion to join in Miles's motion to preclude.  ECF No. 60.  On March 15,

26  2017, the government filed an opposition to Miles's motions.  ECF No. 77 ("Opp.").

27

28  Case No. 15-CR-00561-LHK
ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO
PRECLUDE EVIDENCE

## II.   DISCUSSION

Miles moves to suppress the fruits of the government's search of Miles's email account, "milestrust@gmail.com" (the "milestrust email account").  *See* Mot. at 1.  Miles and Shirazi also move to preclude the government from introducing any evidence of Miles's and Shirazi's arrests in 2007 by the Huntington Beach Police Department.  *Id.* at 11.  The Court first considers the motion to suppress, and then the Court considers the motion to preclude.

### A.   Motion to Suppress

Miles moves to suppress the fruits of the government's search of the milestrust email account.  The Federal Bureau of Investigation ("FBI") searched the milestrust email account pursuant to a search warrant that was issued by U.S. Magistrate Judge Nathanael Cousins.  *See* Opp., Ex. A ("Aff.").  The government's application for the search warrant was supported by the affidavit of FBI Agent Janet Palmore ("Agent Palmore").  *Id.*  Miles contends that suppression is warranted because Agent Palmore's affidavit does not establish probable cause to search the milestrust email account.  Mot. at 2.  Moreover, Miles argues that the government's search of the milestrust email account exceeded the scope of the search protocol established in the search warrant.  *Id.* at 6.

The Court first discusses Agent Palmore's affidavit and the legal standard applicable to the Court's review of a Magistrate Judge's issuance of a search warrant.  The Court then considers the merits of Miles's motion to suppress.

#### 1. Agent Palmore's Affidavit

Agent Palmore submitted an affidavit "in support of a request for a search warrant for" nine specific email accounts of Defendants.  Aff. ¶ 1.  Agent Palmore's investigation into Defendants, which began in August 2014, revealed "that Stephens and his co-conspirators [were] soliciting funding from investors" for a woman named "Shirley," who Defendants represented was "a terminally ill elderly woman."  *Id.* ¶ 7.  Defendants represented that "Shirley" was the "heir to a one-billion dollar estate being held up in probate court by the Federal Reserve Bank."  *Id.*  "In

Case No. 15-CR-00561-LHK
ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO PRECLUDE EVIDENCE

United States District Court
Northern District of California

exchange for contributions towards Shirley's medical expenses, investors" were told that they would receive large returns "when Shirley's trust fund [wa]s disbursed." *Id.*

A source, David Montellato ("Montellato"), informed Agent Palmore "that from October 8, 2009 through February 5, 2013," Montellato transferred approximately $200,000 to Stephens and Miles for Shirley's medical expenses. *Id.* ¶ 8. Montellato informed Agent Palmore that "Stephens was the primary person who solicited [Montellato] to invest," and Miles was "the Trustee over the probate matter." *Id.* Stephens acted as the "conduit between all investors and Miles." *Id.* Stephens represented to Montellato that "Miles deal[t] directly with Shirley" and other individuals involved in the "secret" probate matter, including a San Francisco probate judge and "officials from the Federal Reserve Bank." *Id.* Agent Palmore's investigation revealed, however, that there was "no secret probate proceeding," and that the Federal Reserve Bank had never dealt with Miles or "Shirley." *Id.* ¶¶ 13–15.

Stephens was the primary contact for Montellato, and Stephens sent emails to Montellato in which Stephens updated Montellato on the continuing probate process and Shirley's estate. *Id.* ¶ 16–17. Montellato also received emails from an individual named Shanna McBain ("McBain"). *Id.* ¶ 19. Specifically, McBain sent Montellato and other investors "e-mail blast messages" from 2009 to 2014. *Id.* "Most of McBain's update e-mail blasts indicate[d] that Stephens [was] in contact routinely with Miles and Shirazi and [was] passing on status updates from them regarding the status of the probate and disbursement of funds." *Id.* An example email from McBain, sent on January 23, 2011, stated that once final steps of the probate process were completed, "the Trustee [would] set appointment[s] to transfer [the] funds" to investors. *Id.*

On September 25, 2014, Montellato set up a meeting between an FBI undercover special agent and Stephens. *Id.* ¶ 20. "Miles and Shirazi did not show up to this meeting," although "Stephens acted as their representative" during the meeting and told the undercover agent that he "talk[ed] to Miles everyday regarding updates about the investment." *Id.* ¶ 21. On October 30, 2014, Miles met with Stephens and the undercover agent. *Id.* ¶ 22. During this meeting, Miles

4

United States District Court
Northern District of California

United States District Court
Northern District of California

1  told the undercover agent about his "connection to and interaction with Shirley, the billion/trillion

2  dollar estate, the Federal Reserve Bank of San Francisco, and the general probate process." *Id.*

3         Stephens also communicated with the undercover agent by email. *Id.* ¶ 23.  On October

4  31, 2014, Stephens emailed the undercover agent the "bank coordinates" for a Chase bank account

5  that was under the name "Laurence Miles Trust."  *Id.*¶ 23.  On January 19, 2015, Stephens

6  emailed the undercover agent to give "an update as to our progress with the Laurence Miles Trust

7  and the final organizational process with both the Judge and the transfer of funds and assets to the

8  [Laurence Miles] Trust." *Id.*

9         Agent Palmore's affidavit explained that Miles had two email accounts,

10  "lauriemiles49@yahoo.com," and "milestrust@gmail.com." *Id.* ¶¶ 28–29.  Agent Palmore

11  "learned that milestrust@gmail.com [was] the e-mail address associated with [a Wells Fargo]

12  bank account, account holder, Laurence Miles Trust Account One." *Id.* ¶ 29.  Montellato and

13  other investors told Agent Palmer that they were directed to wire money to the Wells Fargo bank

14  account, and Agent Palmore "knew through [her] investigation that this account [was] in receipt of

15  investment money." *Id.*  Agent Palmore's affidavit explained that "[a]lthough [Montellato] has

16  not received any e-mails from milestrust@gmail.com, there is probable cause to believe that this

17  e-mail account contains messages and content constituting evidence, fruits, and instrumentalities

18  of the fraud given that the bank account associated with milestrust@gmail.com is in receipt of

19  investment funds." *Id.*

20         Finally, Agent Palmore's affidavit set forth a search protocol for searching the "target"

21  email accounts listed in the search warrant. *Id.* ¶ 49.  Specifically, the search protocol required

22  email service providers to disclose to the government the e-mails in the target email accounts "for

23  the period June 8, 2010 to the date of the execution of the warrant."  *See* Aff. Att. B.I.  The search

24  protocol then required law enforcement to review the information provided and keep only

25  information "that constitute[d] fruits, evidence, and instrumentalities of" wire fraud and

26  conspiracy to commit wire fraud.  *See* Aff. Att. B.II.  This included messages that were sent to or

27

28
Case No. 15-CR-00561-LHK
ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO
PRECLUDE EVIDENCE

1    from Defendants, or that contained references to Defendants, "Shirley," "probate," or "solicitation

2    for investment," among other terms.  *Id.*

3        **2. Legal Standard**

4        The Fourth Amendment of the U.S. Constitution provides that "no Warrants shall issue,

5    but upon probable cause, supported by Oath or affirmation, and particularly describing the place to

6    be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Probable cause

7    exists when, under the totality of the circumstances, "there is a fair probability that contraband or

8    evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238

9    (1983).  Whether there is probable cause is a "commonsense practical question," and "[n]either

10   certainty nor a preponderance of the evidence is required."  *United States v. Kelley*, 482 F.3d

11   1047, 1050 (9th Cir. 2007) (internal quotation marks omitted).

12       "Where a magistrate judge has issued a search warrant, that decision is reviewed for 'clear

13   error.'"  *United States v. Alvarez*, 190 F. Supp. 3d 885, 890 (N.D. Cal. 2016) (quoting *United

14   States v. Fernandez*, 388 F.3d 1199, 1252 (9th Cir. 2004)).  "[T]he magistrate judge's

15   determination should be paid great deference" on review.  *Kelley*, 482 F.3d at 1050 (internal

16   quotation marks omitted).  The duty of the reviewing court is "to determine whether the magistrate

17   had a substantial basis to conclude that the warrant was supported by probable cause."  *United

18   States v. Celestine*, 324 F. 3d 1095, 1100 (9th Cir. 2003).

19       **3.  Merits**

20       Miles argues that the fruits of the FBI's search of the milestrust email account should be

21   suppressed for two reasons.  First, Miles asserts that "the warrant lacked probable cause to justify

22   a search."  Mot. at 2.  Second, Miles contends that "the FBI violated the search warrant protocol"

23   in searching the milestrust email account.  *Id.* at 6.  The Court addresses these arguments below.

24            **i. Probable Cause to Search the Milestrust Email Account**

25       First, Miles contends that the search warrant "did not contain probable cause to search the

26   milestrust email account."  Mot. at 2.  Miles argues that probable cause was lacking because Agent

27

28   Case No. 15-CR-00561-LHK
     ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO
     PRECLUDE EVIDENCE

United States District Court
Northern District of California

1   Palmore's affidavit did not show "that the milestrust account was used to make any statements to

2   others," nor did Agent Palmore explain "how or whether Wells Fargo" communicated with the

3   milestrust email account.  *Id.* at 4.  Moreover, Miles contends that even assuming the affidavit

4   supported probable cause to search the milestrust email account for *some* time period, the affidavit

5   did not support probable cause to search the milestrust email account beginning June 8, 2010.  *Id.*

6   at 5.

7           The Court finds that, under the "totality of the circumstances, including reasonable

8   inferences," Agent Palmore's affidavit established a "fair probability" that evidence of the

9   fraudulent scheme would be located in the milestrust email account.  *United States v. Kelley*, 482

10   F.3d 1047, 1048 (9th Cir. 2007).  Agent Palmore's affidavit is 37 pages in length.  As set forth

11   above, Agent Palmore's affidavit described Defendant's fraudulent scheme in detail, and it

12   explained Miles's role in the scheme as the purported Trustee of the "Laurence Miles Trust."  *See*

13   Aff. ¶ 5.  Miles's email account was "milestrust@gmail.com," and Agent Palmore knew that the

14   milestrust email account was associated with a Wells Fargo bank account under the name

15   "Laurence Miles Trust Account One" that was in receipt of investor funds.  *Id.* ¶ 29.  From these

16   facts, the Magistrate Judge had a "substantial basis to conclude" that evidence of the fraudulent

17   scheme would be located in the milestrust email account.  *Celestine*, 324 F.3d at 1100; *see also*

18   *United States v. Patel*, 2013 WL 5819748, at *5 (E.D. Cal. Oct. 29, 2013) (". . . Defendant was

19   conducting some of BGM's affairs through the AOL email account.  Because BGM was

20   reasonably suspected of money laundering and wire fraud . . . and the AOL email account was

21   being used to conduct BGM affairs, there was more than a fair probability that evidence of the

22   debt collection scheme would be found in the AOL email account.").

23           The Magistrate Judge also had a "substantial basis to conclude" that probable cause

24   supported the search of the milestrust email account beginning on June 8, 2010.  *Celestine*, 324

25   F.3d at 1100.  Miles argues that there was no probable cause to search the milestrust email account

26   in 2010 because "[t]he earliest date that the affidavit suggests *Miles* was involved in the alleged

27

28   Case No. 15-CR-00561-LHK
     ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO
     PRECLUDE EVIDENCE

United States District Court
Northern District of California

7

scheme was 2014." Mot. at 5. However, contrary to Miles's assertion, Agent Palmore's affidavit states that Montellato told Agent Palmore "that from October 8, 2009 through February 5, 2013, as part of a purported exclusive investment opportunity, [Montellato] wire transferred a total of approximately $200,000.00 to the bank accounts of Stephens and Laurence Miles." Aff. ¶ 8. Moreover, the affidavit explains that Montellato provided Agent Palmore "a voluminous number of e-mail blast messages ranging in dates from 2009 to 2014 sent to [Montellato] from McBain." *Id.* ¶ 19. "Most of McBain's update e-mail blasts indicate[d] that Stephens [was] in contact routinely with Miles and Shirazi and [was] passing on status updates from them regarding the status of the probate and disbursement of funds." *Id.* A "reasonable inference" from these facts is that Miles was involved in the fraudulent scheme as early as 2009, and thus there was a "fair probability" that evidence of the fraudulent scheme would be found in the milestrust email account dating back to June 8, 2010. *Kelley*, 482 F.3d at 1051.

Accordingly, the magistrate judge did not commit clear error in granting the search warrant. *United States v. Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012) ("A court evaluating the constitutionality of a search conducted pursuant to a search warrant issued by a magistrate reviews the magistrate's probable cause determination for clear error."). The Court DENIES Miles's motion to suppress for lack of probable cause.

### ii. Violation of the Search Protocol

Second, Miles contends that suppression is warranted because the FBI violated the search warrant's search protocol. Mot. at 6. As stated above, the search warrant set forth a search protocol that required the government to review the information provided to the government by the email service providers, and keep only information "that constitute[d] fruits, evidence, and instrumentalities of" wire fraud and conspiracy to commit wire fraud. *See* Aff. Att. B.II. This included emails that were sent to or from Defendants, or that contained references to Defendants, "Shirley," "probate," or "solicitation for investment." *See id.* Miles asserts that the FBI violated this search warrant protocol because "the government seized at least dozens of emails" from the

Case No. 15-CR-00561-LHK
ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO
PRECLUDE EVIDENCE

United States District Court
Northern District of California

1    milestrust email account that discussed the medical care of Miles's son.  Mot. at 7.  Moreover,

2    Miles states that the government seized an email in which "members of Miles' family" discussed a

3    will "with trustees *and attorneys.*"  *Id.* at 8.  Miles further asserts that the government seized

4    irrelevant emails, such as "mundane" emails that Miles sent to his wife.  *Id.*  According to Miles,

5    the government's seizure of these emails demonstrates a "clear failure" by the FBI "to comply

6    with the search protocol," which warrants suppression of *all* evidence from the milestrust email

7    account.  *Id.* at 9.

8          Miles's argument is not persuasive.  Miles has the burden to prove that suppression is

9    warranted.  *Rakas v. Illinois* , 439 U.S. 128, 131 n.1 (1978) ("The proponent of a motion to

10    suppress has the burden of establishing that his own Fourth Amendment rights were violated by

11    the challenged search or seizure.").  However, Miles offers only vague and generalized

12    descriptions of the emails that Miles alleges were seized outside of the scope of the warrant.  *See*

13    Mot. at 6–9.  Miles does not provide any details to the Court about these emails, and Miles does

14    not attach any of these emails to his motion to suppress.  More significantly, Miles does not

15    provide any argument as to why these emails are outside of the scope of the search protocol.  *See*

16    *id.*  As the government contends, the search protocol permitted the government to seize "emails

17    'to, from, pertaining to, or containing references to' any defendant, including Miles, and which

18    may relate to the scheme described in the affidavit."  Opp. at 10–11.  Agent Palmore's affidavit

19    described Miles's participation in a scheme in which investors were solicited to pay for the

20    medical care of a terminally ill elderly woman, and Miles held himself out during this scheme as

21    the Trustee of the estate.  *See* Aff. ¶ 8.  Accordingly, emails that were sent to or from Miles that

22    discussed medical care, "trustees," or "probate" would likely fall within the parameters of the

23    search protocol.  Although these emails may ultimately be irrelevant and inadmissible at trial,

24    Miles has failed to provide any argument or evidence showing that the government acted outside

25    of the scope of the search warrant in obtaining these emails such that the fruits of the FBI's search

26    of the milestrust email account must be suppressed.

27

28    9

United States District Court
Northern District of California

1    Miles's reliance on *United States v. Comprehensive Drug Testing, Inc.* ("*CDT III*"), 621

2    F.3d 1162, 1177 (9th Cir. 2010) (en banc) (per curiam), does not compel a different result.  In

3    *CDT III*, the government had probable cause to seize a drug testing company's electronic records

4    for ten baseball players.  *Id.* at 1167–68.  However, because it was difficult for the government to

5    identify on-site the electronic data relevant to only those ten players, the government sought to

6    seize all of the company's computer data.  *Id.*  The government represented that it would examine

7    and segregate that data off-site in order to seize only the evidence relevant to the ten baseball

8    players at issue.  *Id.*  The magistrate judge granted a search warrant, but included "significant

9    restrictions on how the seized data" was to be handled and sorted by the government.  *Id.* at 1168.

10   However, the government "completely ignored" the search procedures and "rooted out

11   information pertaining to *all* professional baseball players."  *Id.*  The government then claimed

12   that the information about other baseball players was in "plain view," and it used that information

13   "to generate additional warrants and subpoenas to advance the investigation."  *Id.* at 1171.  The

14   Ninth Circuit in *CDT III* found that the government had acted in "callous disregard of the Fourth

15   Amendment," and it affirmed the district court's grant of a Rule 41(g) motion to return the records

16   of all but the ten identified baseball players.  *Id.* at 1172–73.

17   This case is far from the facts in *CDT III*.  As explained above, Miles has not produced any

18   evidence to suggest that the government "completely ignored" the search warrant's search

19   protocol, or that the government broadly seized information from the milestrust email account in

20   order to use the "plain view" exception "to generate additional warrants and subpoenas to advance

21   the investigation."  *Id.* at 1171; *see United States v. Schesso*, 730 F.3d 1040, 1049 (9th Cir. 2013)

22   (explaining the "key concern" in *CDT III* was the "over-seizure of data that could expose sensitive

23   information about other individuals not implicated in any criminal activity").  To the contrary, as

24   discussed above, the government had probable cause to search the milestrust email account, and

25   Miles has not met his burden to show that the government acted outside of the search warrant in

26   seizing information from the account.

27

28   Case No. 15-CR-00561-LHK
     ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO
     PRECLUDE EVIDENCE

1    Accordingly, the Court DENIES Miles's motion to suppress.

2    **B.    Motion to Preclude**

3    Miles, joined by Shirazi, also moves to preclude evidence relating to Miles's and Shirazi's

4    involvement in a 2007 investigation by the Huntington Beach Police Department ("HBPD").  Mot.

5    at 11; *see* ECF No. 66 (Motion for Joinder by Shirazi).  According to Miles, this evidence is

6    character evidence under Rule 404 of the Federal Rules of Evidence, and it is also irrelevant and

7    highly prejudicial.  *See* Mot. at 11.  The Court first sets forth the factual background of the HBPD

8    investigation, and then the Court considers the merits of Miles's motion.

9        **1. Huntington Beach Investigation**

10   On June 25, 2007, HBPD Officer Martin ("Martin") was off duty when Dante Orgolini

11   ("Orgolini") contacted Martin at a car show.  Opp. Ex. B ("HBPD Aff.), at 1.[1]  Orogolini told

12   Martin he could furnish $165,000.00 to Martin if Martin would give $15,000.00 to a friend of

13   Orgolini's, "who was later identified as Mr. Laurence Miles."  *Id.* at 2.  Orgolini told Martin that

14   the $15,000.00 would allow "a large sum of funds to be 'released' to [] Miles from a trust fund."

15   *Id.*  Martin, who realized that the "offer was highly suspect," met with Orgolini and Miles at a

16   hotel on June 23, 2007.  *Id.*  Orgolini and Miles were joined at the hotel by Shirazi.  *Id.*  Miles and

17   Orgolini told Martin that Miles would control and manage a business as CEO "once funds were

18   released from a large trust fund."  *Id.*  Miles and Orgolini represented to Martin that "the value of

19   the trust was approximately $238 billion dollars."  *Id.*

20   The HBPD investigated the allegations and determined that no such large trust fund

21   existed.  On June 27, 2007, the HBPD arrested Miles, Orgolini and Shirazi for suspicion of fraud,

22   conspiracy to commit fraud, and attempted grand theft.  *Id.*  Following his arrest, Miles was

23   interviewed by an HBPD officer.  *Id.* at 4.  Miles told the officer that Miles was introduced to

---

[1] These facts are taken from an affidavit that was submitted by an HBPD officer in support of a California state warrant.  *See* Mot. at 11 n.8; Opp., Ex. B.  Miles relies upon this affidavit to explain the facts of the HBPD investigation in his motion, and the government attaches the affidavit to its opposition.

11

Case No. 15-CR-00561-LHK
ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO PRECLUDE EVIDENCE

1    "'Shirley Molina' approximately three years ago" by a man named Paul Herzwurm

2    ("Herzwurm").  *Id.*  Herzwurm told Miles "that Molina [was] the beneficiary of a large estate from

3    her stepfather, billionaire Kirk Kerkorian."  *Id.*  Miles told the officers that he began having phone

4    conversations with Molina regarding Molina's trust funds, and Miles told Molina that Miles

5    needed investment funds.  *Id.*  Miles subsequently moved to California from his home in Georgia

6    "to become the CEO for Molina" and control Molina's estate.  *Id.*  Molina told Miles that if Miles

7    remained in California and solicited funds to help sustain Molina "until her trust and estate funds

8    from a Kerokorian trust funded," Molina would give Miles the investment funds that Miles

9    needed.  *Id.*  Miles was told by Molina that "her trust [was] under a gag order and [was] 'held up'

10   due to legal litigation."  *Id.*  Molina also told Miles that "she frequently needed funds to help with

11   medical treatment."  *Id.* at 5.

12         The HBPD also interviewed Shirazi, who explained that he was introduced to Miles in

13   January 2007.  *Id.* at 7.  Shirazi told officers that he had helped Miles with living expenses.  *Id.* at

14   8.  Miles had told Shirazi that Shirazi would "be a consultant in their investment opportunities"

15   when the funds from Molina's trust were obtained.  *Id.*

16         The HBPD discovered that Molina had been charged by the San Mateo District Attorney's

17   Office with "various fraudulent charges for duping others" between 1994 and 1996.  *Id.* at 8.  The

18   HBPD also found that there were no ongoing probate proceedings regarding Molina's alleged

19   estate.  *Id.* at 9.  According to the government's opposition in the instant case, the HBPD told

20   Miles and Shirazi during the course of the HBPD investigation that Molina's estate did not exist.[2]

21   Miles, Shirazi, and Orgolini were released from jail and were not charged for the 2007 incident.

22         **2. Merits**

23         Miles's motion to preclude seeks to preclude the government from introducing any

24   evidence from his 2007 arrest and the HBPD investigation.  Mot. at 12.  According to Miles, this

25   _____

26   [2] The government asserts that this fact is taken from a taped interview between HBPD officers and
     Miles and Shirazi that is Bates stamped and in the parties' possession.  The Court has not been
27   provided with a CD of this taped interview.

                                                                                      12
28   Case No. 15-CR-00561-LHK
     ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO
     PRECLUDE EVIDENCE

United States District Court
Northern District of California

is character evidence prohibited by Federal Rule of Evidence 404, and it is irrelevant and highly prejudicial. *Id.* The government asserts, however, that the "government does not seek to introduce evidence that defendants committed fraud in 2007 necessarily, or even that they were arrested in 2007." Opp. at 17. Rather, the government "seeks to introduce evidence that the defendants were told" during the 2007 investigation "that [Molina's] estate was not real." *Id.* According to the government, this evidence is not Rule 404(b) "other acts" evidence, but is rather evidence that is directly related to, and "inextricably intertwined" with, the charges in this case. *Id.* For the reasons discussed below, the Court agrees with the government.

Federal Rule of Evidence Rule 404(b) "provides that evidence of 'other crimes, wrongs, or acts' is inadmissible to prove character or criminal propensity but is admissible for other purposes, such as proof of intent, plan, or knowledge." *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011) (quoting Fed. R. Civ. P. 404(b)). However, Rule 404(b) does not apply "where the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment." *Id.* (internal quotation marks omitted); *see also United States v. Beckman*, 298 F.3d 788, 793 (9th Cir. 2002) ("Evidence of 'other acts' is not subject to Rule 404(b) analysis if it is 'inextricably intertwined' with the charged offense."). The "inextricably intertwined" exception applies where (1) "particular acts of the defendant are part of . . . a single criminal transaction," or (2) the "other act" evidence is necessary "in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995).

The Court agrees with the government that evidence that Miles was told in 2007 that Molina's estate did not exist "is directly related to, or inextricably intertwined with, the crimes charged in the indictment," and is not evidence subject to 404(b). *Rizk*, 660 F.3d at 1131. Miles is charged in the instant indictment with wire fraud and conspiracy to commit wire fraud. In order to prove that Miles committed wire fraud, the government must establish "(1) the existence of a scheme to defraud; (2) the use of a wire, radio, or television to further the scheme; and (3) a

Case No. 15-CR-00561-LHK
ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO PRECLUDE EVIDENCE

1    specific intent to defraud." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013).  The

2    fraudulent scheme alleged in the instant indictment is that Miles and his co-defendant told

3    investors that "they were investing in a trust fund" for Shirley Molina.  Indictment, at ¶ 10.

4    Defendants told investors that Molina was extremely ill and the "heiress to a large estate . . . tied

5    up in a complicated and secret probate proceeding." *Id.*  The indictment alleges that Miles and his

6    co-defendants acted with the intent to defraud investors because Defendants "knew[] there was no

7    estate to be settled," and that Defendants knew that Molina "was not extremely ill and was not the

8    heiress to a large estate." *Id.* ¶ 13–14.

9          Accordingly, evidence that HPBD officers told Miles in 2007 that Molina's estate did not

10   exist is "directly related to" the instant criminal allegations, which accuse Miles of *knowingly*

11   lying to investors about Molina's large estate and related probate proceedings.  *Rizk*, 660 F.3d at

12   1131; *see* Indictment, at ¶¶ 13–14.  Indeed, Miles has represented in this case that "Miles' defense

13   is likely to be, in part, that he had a good faith belief that his representations to investors about

14   [Molina's] estate were true," and "Miles plans to show that Molina tricked him."  ECF No. 63, at

15   10.  Thus, evidence that Miles was told by HBPD officers in 2007 that Molina's estate did not

16   exist is necessary to "permit the prosecutor to offer a coherent and comprehensible story regarding

17   the commission of the crime." *Vizcarra-Martinez*, 66 F.3d at 1013.  This is not "other act"

18   evidence that is subject to 404(b).  *See United States v. Dorsey*, 677 F.3d 944, 952 (9th Cir. 2012)

19   ("Because the testimony bore directly on the commission of the charged crimes, it was

20   inextricably intertwined with those crimes and outside the scope of Rule 404(b)."); *Beckman*, 298

21   F.3d at 794 (finding evidence to be "inextricably intertwined" with the charged offense and not

22   subject to 404(b) where the evidence was used to explain the defendant's relationship with other

23   individuals involved in the charged crime and "to refute [defendant's] claim that he had no

24   knowledge that marijuana was in the trailer").[3]

25

26   [3] Moreover, even if the Court were to find that this evidence was Rule 404(b) "other act"
     evidence, the evidence would still be admissible under Rule 404(b)(2) for at least the purpose of
27   proving Miles's "knowledge" and "intent."  *See* Fed. R. Evid. 404(b)(2) ("Evidence of a crime,

28   Case No. 15-CR-00561-LHK
     ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO
     PRECLUDE EVIDENCE

United States District Court
Northern District of California

1    Thus, to the extent that the government seeks to introduce evidence that HBPD officers

2    told Miles in 2007 that Molina's estate did not exist, Miles's motion to exclude under 404(b) is

3    DENIED.  However, because the Court does not know at this time what specific evidence the

4    government will introduce in order to prove that the HBPD told Miles in 2007 that Molina's estate

5    did not exist, the Court will not rule at this time on whether the government's evidence is

6    admissible under Rule 403.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if

7    its probative value is substantially outweighed by a danger of . . . unfair prejudice.").  Miles and

8    Shirazi may object to specific evidence under Rule 403 in motions in limine or at trial, when the

9    Court can determine in the context of specific evidence whether the evidence's probative value

10   outweighs the evidence's prejudicial effect.

11   **IT IS SO ORDERED.**

12

13   Dated: March 27, 2017

14                                                                    *Lucy H. Koh*

15                                                        LUCY H. KOH
                                                         United States District Judge

16

17

18

19

20

21

22

23

24

25

26   wrong, or other act . . . may be admissible for another purpose, such as proving motive,
     opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of
27   accident.").

                                                    15
28   Case No. 15-CR-00561-LHK
     ORDER GRANTING MOTION FOR JOINDER; DENYING MOTION TO SUPPRESS AND MOTION TO
     PRECLUDE EVIDENCE